CASE No. 881.

HAND v. SAVANNAH AND CHARLESTON RAILROAD CO.

STATE, *EX RELATIONE* ATTORNEY-GENERAL, v. SAME.

1. Where the rights of the several classes of creditors of a railroad corporation have been declared, and the condition of the railroad demands an early sale, such sale will not be postponed until the interests of individual creditors have been adjusted, and the class to which their demands belong has been ascertained.
2. Upon the sale of a railroad, it is customary and reasonable to require cash sufficient to pay costs and other claims demanding immediate payment.
3. But the officer conducting the sale should not be authorized to exact a cash advance previous to the close of the biddings.
4. It is not error to order the payment of undisputed claims, having an undoubted priority, in advance of the adjustment of the rights of other creditors, whose claims are of an inferior rank.
5. The state, being a party in court, is bound as much as other parties, by the judgment in the cause.

Before ALDRICH, J., Charleston, January, 1880.

For a full understanding of these cases, see the report of them in 12 *S. C.* 314. After the *remittitur* was filed in the court below, a motion was made in behalf of Hand and others, holders of six per cent. bonds of 1856, for a sale of the property and a reference to carry out the directions of the Supreme Court. Upon these motions, the Circuit judge filed the following order:

These cases come up on a motion to refer and for an order of sale. The litigation was commenced in 1870, and has been prosecuted with more or less vigor, from that time to the present. Sick and weary, I have labored through the mass of papers submitted, and at last do not see that I have anything to do but to carry out, as nearly as I can, the opinion of the Supreme Court on the appeal from the decree of Judge Wallace.

For the purposes of this inquiry, it is a matter of no consequence who is responsible for the protracted litigation which has resulted so disastrously to the road and to all who have been so unfortunate as to put their money in it or its securities. It is full time to bring it to an end.

The main discussion seems to be whether the court shall order a sale.

After examining the numerous decrees and orders made in the causes, I do not think there is room for two opinions.

The receiver, the judges of the Circuit Court before whom these cases have been heard, and the justices of the Supreme Court, all concur in the conclusion that a sale is proper and necessary, to say nothing of the consent of the counsel in the case to a sale in May, 1875; and, indeed, it cannot be otherwise. Here is a large and valuable property, a highway connecting the commercial emporiums of the States of Georgia and South Carolina, literally going to ruin for the want of proper management. Here are creditors whose claims are undisputed, kept in abeyance for ten years, waiting the determination of a legal controversy in which they have no interest. Here are passengers, shippers on the road, and those living on the line, without

redress, if injury be done to their persons or property. The road is absolutely of no value but to the receiver and those employed by him. It pays not a dollar of debt or interest to those who advanced their money for its construction, while, as the debt grows, the security diminishes.

This is abundantly proved by the application to Judge Hudson, at the last term of the court, for leave to borrow money, on a preferred claim, to keep the road in running order, it being represented as unsafe.*  Can there be a doubt that this ruinous condition of affairs shall be arrested ?  I have always supposed that when a receiver is appointed, it is to speedily wind up the affairs of the corporation, or the business committed to his care.  It is not to make a soft place, where he and his friends and those he employs can make profit, but to save to the creditors the largest amount out of the insolvent concern in the shortest time.  This receiver has been here since April, 1874, and the affairs of the corporation are no nearer a settlement than when he took charge.  I do not attach blame to him, for in May, 1875, he asked the court for instructions as to sale.

Nor am I impressed with the argument that if a sale is ordered now, it will give an undue advantage to the smaller creditors, and enable them to buy the road at a greatly depreciated price.  All that these lesser creditors want is their money, and so soon as the property is made to bring enough to cover their claims and the expenses of the litigation and sale, they will be satisfied.  It will then be the fault of the six per cent. and seven per cent. bondholders, if they permit any combination with outsiders and those creditors to deprive them of their rights, under the acts of incorporation and the judgment of the court.  They must protect themselves, and what prevents them from making a combination to obtain the full value of the property, leaving their rights to be litigated over the purchase money instead of the property, I do not see.  The thing is in their own hands, and if they determine to let the property be sacrificed, it will be their own fault.  I am not called upon here to pass judgment on the lien of those bonds, but, under the opinion of

See 12 *S. C.* 83.

the Supreme Court, do not see how there can be doubt on this question. A reference, however, is desired, and it will be so ordered.

It is therefore ordered, adjudged and decreed that all the property and franchises of the Savannah and Charleston Railroad Company, included and described in the several deeds and mortgages proved in these cases, and all the property of what kind soever the said company is seized and possessed, be sold by Mr. W. D. Porter, master, at public aution, to the highest bidder, at the post-office in the city of Charleston, in the State of South Carolina, on the first Monday in June next, at twelve o'clock M. So much of the permanent property of said company embraced in any of the liens or mortgages proved, or hereafter to be proved, as lies in the State of Georgia, to be sold subject to such liens as have been or may hereafter be established under the laws of that state.

It is further ordered that the said sale be made on the following terms and conditions—that is to say, cash enough to pay the undisputed claims to be reported by the referee hereinafter to be named, and the costs and fees of the master and referee; the cash to be paid immediately after the close of the bidding, and the master may require of any bidder, during the progress of said sale, to deposit the said sum to be paid in cash, in a bank in the city of Charleston, subject to his order. In case of refusal to pay the cash or make the deposit, the bid to be disregarded and the sale to be proceeded with, as if the same had not been made; the balance of the purchase money to be paid in one year, interest from date, to be secured by the bond of the purchaser, with two or more approved sureties and a mortgage of the property sold; provided that the master have leave to dispense with the personal security, upon a deposit, by the purchaser, with him, of United States government bonds equal to one-half of the purchase money unpaid, as collateral security.    *    *    *

It is further ordered that, after paying such costs, charges and disbursements of these proceedings, as may hereafter be determined to be a proper charge, the balance shall be applied to the payment of such undisputed liens, claims and demands

as the referee, hereinafter to be named, shall report. Then to such liens, bonds and coupons as the Supreme Court of the state shall or may have decided are entitled to receive the same, ratably; the purchaser to have the privilege of paying the whole of the purchase money in cash, or to anticipate the payment at such time as he may desire. * * *

It is further ordered, if the referee fail to make his report in time for the sale, the cash portion of the same shall be $50,000.

It is further ordered that the master do make a report to this court of all his actings and doings under this order.

It is further ordered that Mr. W. Alston Pringle is appointed special referee to inquire and report:

1. What claims and demands against the Savannah and Charleston railroad are undisputed and entitled to immediate payment.

2. What bonds and coupons of said company, issued under the act of December, 1856, are entitled to priority of payment out of the property of said company, under the principles settled by the judgment of the Supreme Court, filed September 30th, 1879.

3. The amount of bonds issued under the act of March 2d, 1869.

4. The amount of bonds and coupons issued under the act of December 19th, 1856, not entitled to priority of payment.

5. The bonds and coupons issued under the act of March 2d, 1869, endorsed by the guaranty of the state.

6. What coupons of bonds issued under the act of 1856 have been funded under the third section of the act of 1869, the number and value of said coupons, by whom, when, and under what circumstances such coupons were funded.

7. That the said referee have leave to report any special matter.

It is further ordered that the master do tax the costs, charges and disbursements chargeable on the fund to be realized from the sale.

Notices of appeal from this order were duly served, as follows:

By the executors of Cutting—

1. Because these appellants are the holders of a large amount of bonds secured by mortgage of the Savannah and Charleston railroad and its appurtenances, claiming the first lien thereon; that there are also a large number of other bonds claiming a lien in preference to that of these appellants; that it is not expected or believed that the road can sell for enough to pay both these liens; that a reference has been ordered, to ascertain which of said bonds are entitled to preference, but no report has yet been made or judgment rendered; that it is the duty of these appellants, as executors, to protect the interest of their testator by bidding at the sale a sufficient sum to insure a fair price for the property, but this they cannot do unless it is ascertained to what portion of the sales their testator is entitled; that the sale being ordered in advance of this ascertainment, they cannot bid at all in the interest of the estate, and the said interest is thereby exposed to absolute sacrifice.

2. Because the estate of their testator is stripped still further of protection by the requisition that, in the progress of the bidding, these appellants, if bidders to protect the interest of their testator, may be required, although mere executors, to deposit in cash the amount of any bid made, even though eventually entitled to the whole proceeds of the sale, and on failure to make such deposit, the bid is to be rejected and the sale closed.

3. Because the bridge over the Savannah river and the section of the railroad in the State of Georgia are not embraced in the mortgage or lien of the state, under the act of 1856, and are not within the jurisdiction of the courts of South Carolina, and are now in the hands of a receiver appointed by the courts of Georgia; that the order of sale is erroneous and misleading in extending its operation to those portions over which this court has no jurisdiction.

4. Because the said order is erroneous in directing any distribution of the proceeds of sale before a final adjustment shall have been made of the claims under the various liens, and of the preferences claimed upon the same.

5. Because the State of South Carolina is liable for the six per cent. bonds, as guaranteed under the act of 1856, and for

the seven per cent. bonds, on her representation, made by the act of 1869; that the present suit is at the instance of the said state, and this sale, if carried out, must result in great loss to one or the other of these classes of bonds, for the payment whereof the state is bound; that it is therefore unjust and inequitable that an order of sale should be made at the instance of a plaintiff, before performance by him of his own contracts, in relation to the subject matter of the sale, or any final adjudication fixing the right of one party or the other to reclamation for its loss.

McBurney and others appealed upon the above grounds and the following additional:

1. That the power of the master to require payment in money or a deposit on every bid, of which cash may be required, is arbitrary, unusual and embarrassing, and must chill all bidding at such sale.

2. That there is no discrimination as to undisputed claims, when these claims have several and distinct liens on several and distinct pieces of property, and the sales of the whole road should not be charged with these payments in cash.

3. That the mode of sale is injurious to the interests of all and every party in the cause.

*Messrs. C. G. Memminger* and *J. B. Campbell*, for appellants.

*Messrs. Buist & Buist, T. M. Hanckel* and *W. H. Brawley*, contra.

May 13th, 1880. The opinion of the court was delivered by

WILLARD, C. J. This case was heard before this court upon an appeal from a final decree, (12 *S. C.* 314,) and decided so far as to determine the relative priorities of the different classes of creditors in respect of the fund to be produced by the sale of the road of defendant corporation. Pending that appeal this court passed an order to the effect that it was practicable and desirable that the railroad of the defendant corporation should be sold, but leaving the Circuit Court at liberty to determine when such sale should be made. The action of the Circuit Court, fixing the

time of sale, was not taken until the judgment of· this court had been rendered on such appeal, and the *remittitur* filed in the Circuit Court.

The sale was ordered for the first Monday in June next, and from that order the present appeal was taken.  The appellant urges no grounds of objection to an early sale that did not exist and apply with equal and even greater force at the time when the general instruction for the sale of the road was given by this court.  At that time the relative priorities of the various classes of creditors entitled to participate in the fund to be made by such sale were not ascertained, while, at the present time, these priorities have been ascertained.  The leading objection to the sale, at the present time is, in substance, that it has not been ascertained what individual creditors are entitled to be admitted to the several classes thus established.  We see no reason why the sale should be postponed until all the parties know the precise interest they may have in the fund arising from the sale.  It may be that they would, in some instances, be in a better condition to participate in the sale as bidders.

This consideration might have had some weight while the priorities of the respective classes were uncertain, but it would be going to an unreasonable extent to postpone the sale until the various individuals composing these classes had been ascertained by judicial orders.  The primary duty of the court is to see that the property is sold at an early day, so as to prevent loss from deterioration caused by delay.

If the court have any concern with the situation of the individual creditors as it regards their capacity to become bidders at the sale, that must constitute quite a subordinate matter. · We are satisfied with the conclusion of the Circuit judge that the condition of the road is such that an early sale is indispensable, and that to delay such sale to the prejudice of the fund for the mere purpose of facilitating some of the creditors who may desire to become bidders at the sale, would be without precedent and altogether unreasonable.

Objection is made to that part of the decree of sale that directs " that an amount of cash sufficient to pay the undisputed claims to be reported by the referee," " and the costs and fees of the

master and referees," to be immediately paid after the close of the biddings, and that " the master may require of any bidder, during the progress of said sale, to deposit the said sum, to be paid in cash, in a bank in the city of Charleston, subject to his order ;" and in case of the failure to make such payment, the bid of the person so failing to deposit should be disregarded.

The sum to be thus advanced is fixed in another part of the decree at $50,000, in the event that the report of the referee on that subject should not be made in time for the sale.

It is fairly to be presumed, from the amount beyond which the cash advances is not to go, that what was called the " undisputed claims " to be reported, are claims of a character demanding immediate cash payment, upon which time could not properly be allowed. Viewed in this light, the provision for cash payment is customary and reasonable. The fact that this provision may work injuriously to the executors of Cutting, cannot be assumed in the absence of proof to that effect, nor would, if established, afford ground for departing from a proper safeguard against spurious bidding. The personal inconvenience of a bidder, though resulting from the nature of his legal powers, is no ground for disturbing the arrangement looking to the *bona fides* of the bidding.

We see no reason for authorizing the master to demand a cash advance previous to the close of the biddings. Whatever convenience may result from possessing the means of eliminating spurious bids during the progress of the bidding, may be counterbalanced by a tendency to deter parties from bidding, and' thus chilling the bids. The order must be modified by striking therefrom the words as follows: " Of any bidder, during the progress of said sale, to deposit." There is no proof before us that the sum of $50,000 is in excess of the amount reasonably required for the purpose indicated by the order, and no ground. exists for interfering, with that part of the order fixing such amount.

That part of the order describing the property to be sold follows the decree of this court, under which the sale is ordered.

The sale of the permanent property of the defendant corporation in the State of Georgia, as directed by the order of sale, was.

adjudicated by this court in that decree, and this adjudication cannot be disturbed.

The order of sale is not defective in ordering the payment of the undisputed claims to be ascertained, even if it should happen that at the time of such payment there remains unascertained the interests of persons claiming admission to the several classes, provided that such claims, so paid, have a clear priority under the decree in this cause over those classes that remain to be ascertained, as it regards only the persons entitled to participate in them. The order, properly construed, is in harmony with the view just expressed, and no reason appears for disturbing it.

The objection, based on the supposed interest of the state, raised not by the state, but by the non-resident executors of an estate, existing and administered within another state, if properly represented before us, could not have weight, as the state is equally bound with all other parties to the decree under which the sale is ordered.

The exceptions presented in behalf of McBurney and others, and the Savannah and Charleston Railroad Company, are disposed of by what has already been said.

The order of sale must be modified in the manner hereinbefore stated, and so modified, is affirmed, and the appeal dismissed as to all other matters.

McIVER and McGOWAN, A. J.'s, concurred.